**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH REEDER and SANDRA K. REEDER, Individually and as representatives of a class and/or sub-classes similarly situated persons | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 09-cv-2043 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| HSBC USA, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Joseph and Sandra K. Reeder have filed suit, on behalf of themselves and all other similarly situated persons, alleging that Defendants HSBC USA, Inc., HSBC Bank USA, N.A., HSBC Bank Nevada, N.A., ("HSBC Nevada"), HSBC Card Services, Inc. ("HSBC Card Services") (collectively "HSBC Defendants"), and ER Solutions, Inc. ("ER") violated federal and state consumer protection statutes. Count I alleges violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") against the HSBC Defendants. Count II asserts claims under the Fair Credit Billing Act, 15 U.S.C. § 1666, *et seq.* ("FCBA") against all Defendants. Count III seeks recovery against Defendants HSBC Nevada and HSBC Card Services for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. Count IV alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA") by all Defendants.

Currently before the Court is the HSBC Defendants' motion to dismiss all claims against them [18] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, HSBC Defendants' motion to dismiss [18] is granted. However, the dismissal is

without prejudice at this time, and Plaintiffs are given 30 days to file an amended complaint if they believe that there are good grounds for doing so. See *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("For purposes of Rule 15(a), a motion to dismiss does not constitute a responsive pleading, thus, 'an order dismissing the original complaint normally does not eliminate the plaintiff's right to amend once as a matter of right'") (citations omitted).

## I.    Background

### A.    Procedural Background

Plaintiffs filed suit against Defendants in the Circuit Court on Cook County on February 26, 2009. ER Solutions, Inc. timely filed a notice of removal [1] on April 2, 2009, and the HSBC Defendants consented to removal [11] on April 6, 2009.

### B.    Factual Background[1]

At some point prior to October 1, 2008, Plaintiffs obtained a credit card issued by HSBC Nevada. Plaintiffs were assessed a $50 annual fee on that account in their October 2008 billing statement, dated October 3, 2008. The billing statement indicated that Plaintiffs' October payment was due on October 25, 2008. The reverse side of the billing statement provided the following pertinent details regarding the annual fee: "If your Annual Fee is billed annually, you can avoid paying the fee if you call and close your Account within 30 days of being billed. You may continue to use your Card during the 30 day period without paying the fee." On October 8, 2008, Plaintiff Joseph Reeder sent an e-mail to HSBC card member services telling them to cancel the account. The following day, card member services responded by e-mail, instructing Plaintiff to call the Customer Care Department if he wished to close the account and providing

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the first amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court also considers the documents Plaintiffs attached to their complaint. *See* FED. R. CIV. P. 10(c).

the phone number for the Customer Care Department. Plaintiff did not call to cancel the card. Instead, two weeks later, on October 23, 2008, Plaintiff again sent an e-mail to HSBC card member services requesting that the account be closed. On October 25, 2008, a card member services representative sent Plaintiff an e-mail confirming that the account had been closed.

Plaintiffs received another billing statement in November 2008, which again reflected the $50 annual fee, as well as a late fee. Plaintiffs concluded that the account had not been closed as requested, and on November 9, 2008, Plaintiff sent HSBC card member services another e-mail asking that the account be closed. A card member services representative responded by e-mail that the account had been closed on October 26, 2008 but that the payment was past due. Plaintiff wrote back on November 11, 2008, stating "there should not be any charges since the account was closed upon receipt of the membership fee. I don't want the card so the fee should not apply." The following day, a card member services representative responded to Plaintiff by e-mail and stated that "[a]s a courtesy, the late fee and annual fee in the amounts of $39.00 and $50.00 have been credited to your account."

Nevertheless, on November 14, 2008 and December 12, 2008 the Collections Department of HSBC Card Services sent Plaintiff Joseph Reeder past due statements on the account, seeking payment of the $50 annual fee and the late fees. On or about December 20, 2008, Plaintiffs received a notice from Defendant ER, a collection agency, regarding the outstanding balance on their card. Plaintiffs allege that Defendants have reported their outstanding debt to various credit scoring and reporting agencies.

## II.    Legal Standard On Motion To Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d

1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

### A. Count III and Claims Against Defendants HSBC USA Inc., and HSBC Bank USA, Inc.

Plaintiffs do not oppose dismissal of either their claims against HSBC USA Inc., and HSBC Bank USA, Inc., or the Fair Debt Collection Practices Act claims set forth in Count III of

the Complaint. Therefore, the Court grants the HSBC Defendants' motion to dismiss as to Count III and the claims asserted against Defendants HSBC USA Inc. and HSBC Bank USA, Inc.

### B.    Truth In Lending Act Claims (Count I)

Congress enacted TILA "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and to avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). To achieve that goal, TILA does not "substantively regulate consumer credit." *Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001). Rather, the Act requires that creditors make certain disclosures regarding the terms and conditions of credit before consummation of a consumer credit transaction. *Id.*

### 1.    Whether Plaintiffs Have Adequately Alleged That Defendants are Creditors

TILA imposes liability on creditors. 15 U.S.C. § 1640(a). There is no dispute that this case concerns an open-end credit plan involving a credit card. Under the statute, "in the case of an open-end credit plan involving a credit card, the card issuer * * * [is a] creditor[]." *Id.* § 1602(f). The statute defines the term "card issuer" as "any person who issues a credit card, or the agent of such person with respect to such card." *Id.* § 1602(n).

Defendants contend that Count I must be dismissed because Plaintiffs have failed to adequately allege that either HSBC Nevada or HSBC Card Services is a "creditor," as defined by TILA. The Complaint alleges – in conclusory fashion – that the HSBC Defendants "constituted * * * 'card issuers' per 15 U.S.C. § 1602(n), and * * * 'creditors' per 15 U.S.C. §§ 1602(f) and 1692a(4)." Cmplt. ¶ 3. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Applying this standard, the allegations set forth in paragraph 3 of the Complaint alone may not be sufficient to state a claim. However, the Court also must consider the exhibits to the Complaint, which are "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

With respect to HSBC Nevada, exhibit G to the Complaint states that Plaintiffs' account was "issued by HSBC Bank Nevada, N.A." Based on this exhibit, the Court concludes that Plaintiffs sufficiently have alleged that HSBC Nevada is a card issuer, and thus a creditor for purposes of TILA.

The exhibits also contain references to HSBC Card Services. For example, one of the past due notices Plaintiffs received was signed HSBC Card Services. See Cmplt., ex. G. In addition, all of the billing statements that Plaintiffs received instructed them to make checks payable to HSBC Card Services. *Id.*, exs. A, D, H, I, and J. In their brief, Plaintiffs argue that these exhibits demonstrate that HSBC Card Services acted as HSBC Nevada's agent, such that HSBC Card Services is a "card issuer" and thus a "creditor" under TILA.

In regard to the "agent" aspect of the statutory definition of "card issuer," the Official Staff Commentary to the TILA regulations state:

> Because agency relationships are traditionally defined by contract and by state or other applicable law, the regulation does not define agent. Merely providing services relating to the production of credit cards or data processing for others, however, does not make one the agent of the card issuer. In contrast, a financial institution may become the agent of the card issuer if an agreement between the institution and the card issuer provides that the cardholder may use a line of credit with the financial institution to pay obligations incurred by use of the credit card.

Official Staff Interpretations, 12 C.F.R. § 226, Supp. I, ¶ 2(a)(7) (2009); see also *Neff v. Capital Acquisitions & Management Co.*, 352 F.3d 1118, 1120 (7th Cir. 2003).[2]

"An agency relationship exists when one 'undertakes to manage some affairs to be transacted for [and] * * * on account of the * * * principal.'" *Azimi v. Ford Motor Co.*, 977 F.Supp. 847, 851 (N.D. Ill. 1996) (citation omitted). "To plead the existence of an agency relationship, the plaintiff must 'allege some factual predicate (even though generalized rather than evidentiary in nature) to create the inference' of agency." *Id.* (quoting *Rand Bond of N. Am., Inc. v. Saul Stone & Co.*, 726 F.Supp. 684, 687 (N.D. Ill. 1989)). Here, the Complaint does not explicitly allege that HSBC Card Services is an agent of HSBC Nevada. However, the exhibits contain a sufficient factual predicate to create the inference that HSBC Card Services acted as HSBC Nevada's agent in that the billing statements instructed Plaintiffs to make checks payable to HSBC Card Services. Therefore, Plaintiffs have adequately alleged that both remaining HSBC Defendants are creditors under TILA.

## 2. Whether Plaintiffs Have Adequately Alleged a TILA Violation

Count I of the Complaint alleges that Defendants violated 15 U.S.C. §§ 1631(a) and/or 1632(b) by falsely representing that Plaintiffs would not be charged the annual fee if they closed their account within 30 days of the assessment of that fee.[3] Cmplt. ¶ 26. The Complaint also alleges that Defendants' representation regarding the annual fee violated 15 U.S.C. § 1637. Cmplt. ¶ 18. Section 1637 details the required disclosures in open end consumer credit plans,

---

[2] The Staff Interpretations construing TILA and its implementing regulations are "dispositive * * * unless [they are] demonstrably irrational." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565 (1980).

[3] Section 1631(a) requires that each creditor make the statutorily required disclosures to the person who is obligated on a consumer credit transaction, or, in transactions involving multiple obligors, to the primary obligor. 15 U.S.C. § 1631(a). Section 1632(b) allows any creditor to make additional disclosures beyond those that are specifically required. 15 U.S.C. § 1632(b).

like the credit card account at issue here. In their response brief, Plaintiffs contend that Defendants have violated two subsections of Section 1637 – 15 U.S.C. §§ 1637(d) and 1637(b)(3).

Section 1637(d) relates to the disclosure of any annual fee, other periodic fee, or membership fee imposed for the issuance or availability of a credit card. Section 1637(d) provides that, under certain limited circumstances, disclosures of such fees may be provided "[w]ith the periodic billing statement first disclosing that the fee has been posted to the account." 15 U.S.C. § 1637(d)(2)(A)(ii). Disclosure in the first billing statement showing the fee is permitted "only if – (i) the consumer is given a 30-day period to avoid payment of the fee or to have the fee re-credited to the account in any case where the consumer does not wish to continue the availability of the credit; and (ii) the consumer is permitted to use the card during such period without incurring an obligation to pay such fee." *Id.* § 1637(d)(2)(B). Plaintiffs contend that Defendants violated Section 1637(d) because Plaintiffs were not in fact allowed to avoid the annual fee by canceling the account within 30 days.

Section 1637(b)(3) requires the disclosure of amounts credited to a credit card account during the billing period in the billing statement. Plaintiffs maintain that Defendants violated Section 1637(b)(3) by failing to credit their account, as promised in the November 12, 2008 e-mail, for the annual fee and late fees in the amounts of $39 and $55.

Defendants argue that, because the Complaint does not specifically invoke subsections (d) and (b)(3) to 15 U.S.C. § 1637, Plaintiffs improperly are attempting to amend their Complaint in their response brief. It is well established that a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion to dismiss. See *R.C. Wegman*

*Const. Co. v. Admiral Ins. Co.*, 2009 WL 779834, at *4 n.2 (N.D. Ill. March 20, 2009); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984).

The pertinent question is whether the Complaint gave Defendants "fair notice" that Plaintiffs were asserting claims under Sections 1637(d) and 1637(b)(3), as well as "the grounds upon which" those claims rest. *Twombly*, 550 U.S. at 555. Here, the Complaint alleges that Defendants violated Section 1637 by falsely representing that Plaintiffs would not be charged the annual fee if they closed their account within 30 days of the assessment of that fee, but does not specifically cite to subsection (d) or subsection (b)(3) of Section 1637.

It is clear from the Complaint that Plaintiffs are alleging a claim based on the imposition of the annual fee and Defendants' allegedly false disclosures regarding Plaintiffs' ability to avoid that fee. Therefore, the Complaint put Defendants on notice of the Section 1637(d) claim, which is based on the imposition and disclosure of the annual fee. Indeed, Defendants addressed Section 1637(d) in their opening brief, which indicates that they were in fact on notice of that claim.

With respect to Section 1637(b)(3), the Complaint alleges that Defendants informed Plaintiffs by e-mail that their account had been credited, but that no such credit has appeared on their account statements. Cmplt. at ¶ 12. However, there is no specific allegation that this failure to credit the account violated TILA. The allegations in the Complaint likely were insufficient to put Defendants on notice of Plaintiffs' Section 1637(b)(3) claim. In any event this second claim fails, as discussed below.

                    a.     *Section 1637(d) Claim*

It is undisputed that an annual fee was imposed on Plaintiffs' account in October 2008, and that Defendants first disclosed the existence of such a fee in Plaintiffs' October 2008 billing

statement. Because the existence of the annual fee was first disclosed in the periodic billing statement indicating that the fee had been posted to the account, Defendants were required by Section 1637(d) to disclose to Plaintiffs that they had a 30-day period to avoid payment of the fee. 15 U.S.C. § 1637(d)(2)(B). There is no dispute that Defendants made that required disclosure on the reverse side of the October billing statement, which provided: "you can avoid paying the [annual] fee if you call and close your Account within 30 days of being billed. You may continue to use your Card during the 30 day period without paying the fee." But Plaintiffs' Section 1637(d) claim is not based on Defendants' failure to make the requisite Section 1637 disclosures. Rather, Plaintiffs' contend that Defendants violated Section 1637(d) by not allowing them to avoid the fee by canceling their account within 30 days. According to Plaintiffs, Defendants' failure to comply with the disclosure rendered the disclosure false, in violation of TILA.[4]

Defendants counter that only the failure to make required disclosures can give rise to liability under TILA, and that Plaintiffs cannot maintain a TILA claim solely based on Defendants' alleged failure to act in accordance with those disclosures. Under Defendants' reading of the statute, TILA requires only that certain disclosures be made, regardless of their accuracy. As discussed below, Defendants' interpretation fails because it is inconsistent with both Seventh Circuit precedent and the purpose of TILA.

The Seventh Circuit repeatedly has held that "[a]ll TILA disclosures must be accurate." *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748, 753 (7th Cir. 2000); see also *Rendler*, 272 F.3d at 996; *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th

---

[4] Plaintiffs also argue that Defendants' disclosure was untimely. As noted above, Section 1637 permitted Defendants to disclose the annual fee for the first time in the billing in which is was assessed, as they did here. Therefore, the disclosure was timely. To the extent that Plaintiffs were not given 30 days in which to cancel their account and avoid the fee, as they allege, that merely renders the disclosure inaccurate, not untimely.

Cir. 1997) (stating that TILA "requires disclosure – meaning * * * *accurate* disclosure"); *Smith v. Cash Store Management, Inc*., 195 F.3d 325, 328 (7th Cir. 1999) ("All TILA disclosures must be accurate, and lenders are generally strictly liable under TILA for inaccuracies, even absent a showing that the inaccuracies are misleading") (internal citations omitted). Similarly, courts in this district have held that "[i]t is axiomatic that in order for the creditor to be in compliance with TILA, the disclosures must be accurate." *Abraham v. North Ave. Auto, Inc*., 2001 WL 1002067, at *5 (N.D. Ill. Aug. 24, 2001) (quoting *Acevedo v. Bally Total Fitness Corp.*, 1999 WL 1045035, at *3 (N.D. Ill. Nov. 12, 1999)). Defendants' interpretation plainly cannot be reconciled with the binding case law in this circuit.

Defendants' view that TILA does not impose liability for inaccurate disclosures also is inconsistent with the statute's goals of assuring a *meaningful* disclosure of credit terms and allowing consumers to avoid the *uninformed* use of credit. See 15 U.S.C. § 1601(a); *Rendler*, 272 F.3d at 996. Consistent with its obligation to construe TILA "liberally * * * to ensure achievement of its goal of meaningful disclosure," this Court finds that the Act requires that disclosures be accurate. *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1282 (7th Cir. 1980), *rev'd on other grounds*, 452 U.S. 205 (1981); see also *Munoz v. Seventh Avenue, Inc*., 2004 WL 1593906, at *3 (N.D. Ill. July 15, 2004) (as a remedial statute TILA must be construed liberally "in favor of a consumer").

Defendants contend that their reading of the statute is consistent with 15 U.S.C. § 1634, which provides:

> If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part.

But Section 1634 insulates creditors from liability only where *accurate* disclosures are rendered inaccurate by subsequent events. See *Burns v. Elmhurst Auto Mall, Inc.*, 2001 WL 521840, at *3 (N.D. Ill. May 16, 2001) ("Since the disclosure was accurate when the contract was completed, the lack of available financing at the rate disclosed does not render the disclosures actionable"); *Cardenas v. Classic Chevrolet, Inc.*, 2000 WL 1672317, at *3 (N.D. Ill. Nov. 3, 2000) (same). However, the provision does not allow creditors to escape liability for TILA disclosures that are inaccurate from their inception, as Plaintiffs contend Defendants' disclosure was in this case.

Nor does *McCoy v. Franklin Sav. Ass'n*, 636 F.2d 172 (7th Cir. 1980), support Defendants' view that a creditor's failure to comply with disclosures made pursuant to TILA cannot give rise to a cognizable claim under the statute. Defendants point to the Seventh Circuit's statement in *McCoy* that "The Truth-in-Lending Act is a 'disclosure' law. * * * It is the obligation to disclose, not the duty of subsequent performance, towards which the Act is directed." 636 F.2d at 177 (quoting *Burgess v. Charlottesville Savings and Loan Ass'n*, 477 F.2d 40, 44-45 (4th Cir. 1973)). In *McCoy*, the creditor imposed terms in a second loan commitment letter that differed from the terms of the first loan commitment letter, after the first commitment letter had expired. The Seventh Circuit held that the modifications did not give rise to a TILA claim, reasoning that "nothing in the Truth-in-Lending Act requires a bank to use the same terms in a second commitment letter after its first commitment letter has expired." 636 F.2d at 176. The Court also concluded that the disclosures in the first commitment letter had been rendered inaccurate by subsequent events, such that Section 1634 insulated the creditor from TILA liability. Contrary to Defendants' claim, *McCoy* did not hold that disclosures that are inaccurate from their inception cannot give rise to TILA liability.

Here, the Complaint alleges that the disclosure regarding the avoidance of the annual fee was false. Cmplt. at ¶ 26. While the Complaint does not explicitly allege that the disclosure was false when it was made, as in *Abraham*, "[t]he allegations of the complaint are consistent with the implication that [Defendants] did not intend for the disclosed terms of the [account] to apply." 2001 WL 1002067, at *5. "Accordingly, [this Court] cannot say at this stage of the proceedings that under this set of facts, if proved, [Defendants'] actions would not be a violation of TILA." *Id.*

### b.    *Section 1637(b)(3) Claim*

Section 1637(b)(3) requires that, at the end of each billing cycle in "which there is an outstanding balance in [a credit card] account or with respect to which a finance charge is imposed," the creditor must provide the cardholder with a statement setting forth "[t]he total amount credited to the account during the period." On November 12, 2008, an HBCS card member services representative e-mailed Plaintiffs, stating that, "[a]s a courtesy, the late fee and annual fee in the amounts of $39.00 and $50.00 have been credited to your account." However, according to the complaint, Plaintiffs' account never actually was credited, and Defendants continued to seek payment of the fees. Plaintiffs contend that the failure to issue the promised credit violated Section 1637(b)(3). But Plaintiffs ignore the plain language of the statute, which makes clear that Section 1637(b)(3) applies only to "amount[s] credited to the account." Because Plaintiffs allege that their account was not in fact credited, despite the promise of the HSBC representative, Section 1637(b)(3) in inapplicable.

### 3.    **Availability of Damages**

Defendants contend that even if Plaintiffs have alleged a TILA violation, Count I nevertheless should be dismissed because Plaintiffs' Complaint fails to state a claim for statutory or actual damages. Having concluded that Plaintiffs have properly invoked Section 1637(d), the

Court will consider whether Plaintiffs have adequately stated a claim for statutory or actual damages, and if not, whether their failure to do so should result in the dismissal of Count I.

### a.    Statutory damages

The statutory damages available for a TILA violation are outlined in 15 U.S.C. § 1640(a), which provides in relevant part:

> In connection with the disclosures referred to in subsection (c) or (d) of section 1637 of this title, a card issuer shall have a liability under this section only to a cardholder who *pays a fee* described in section 1637(c)(1)(A)(ii)(I) or section 1637(c)(4)(A)(i) of this title or who *uses the credit card or charge card*.

15 U.S.C. § 1640(a) (emphasis added).  Here, Plaintiffs did not pay the annual fee or use the credit card.  Therefore, Plaintiffs cannot recover statutory damages on their Section 1637(d) claim.  See *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 992 (7th Cir. 2000) (holding that "§ 1640(a) means what it says, that 'only' violations of the subsections specifically enumerated in that clause support statutory damages").

### b.    Actual damages

In order to state a claim for actual damages under TILA, a plaintiff must demonstrate detrimental reliance upon an inaccurate or incomplete disclosure.  See *Villasenor v. American Signature, Inc.*, 2007 WL 2025739, at *4 (N.D. Ill. July 9, 2007); *Nevarez v. O'Connor Chevrolet, Inc.*, 303 F. Supp. 2d 927, 935 (N.D. Ill. 2004); *Gold Country Lenders v. Smith,* 289 F.3d 1155 (9th Cir. 2002); *Perrone v. General Motors Acceptance Corp.,* 232 F.3d 433, 436 (5th Cir. 2000); *Peters v. Jim Lupient Oldsmobile Co.,* 220 F.3d 915, 917 (8th Cir. 2000); *Turner v. Beneficial Corp.,* 242 F.3d 1023, 1028 (11th Cir. 2001).  In other words, a plaintiff must establish "a causal connection between the inaccurate disclosure and [her] injury by demonstrating that [s]he relied on the inaccurate disclosure and thereby was effectively prevented from obtaining better credit terms elsewhere." *Nevarez v. O'Connor Chevrolet, Inc.*,

303 F. Supp. 2d 927, 935 (N.D. Ill. 2004) (citation omitted); see also *Villasenor*, 2007 WL 2025739, at *4 (dismissing TILA claim for actual damages where plaintiff had "not alleged that he would have sought a lower price but for the allegedly inaccurate TILA disclosure or that he would have been able to obtain a lower price").

Plaintiffs argue in their brief that Defendants' alleged violation of Section 1637(d) caused actual damage to their credit-worthiness and credit standing. But there is no allegation in the Complaint that Plaintiffs' credit scores have been adversely affected. Indeed, the Complaint does not even identify the alleged injury entitling Plaintiffs to actual damages. Plaintiffs have failed to plead detrimental reliance, and therefore have not properly alleged a claim for actual damages.

*c.*     *Other relief*

Defendants contend that because Plaintiffs cannot maintain a claim for statutory or actual damages, Count I must be dismissed. However, in addition to damages, Plaintiffs' prayer for relief in Count I seeks attorney's fees, costs, and appropriate equitable and injunctive relief. Defendants offer no reason why Count I nevertheless must be dismissed if Plaintiffs have stated a claim for remedies other than damages. Therefore, the Court will consider whether Plaintiffs have stated a claim for attorney's fees or injunctive relief.

Section 1640(a) governs the right to attorney's fees and costs, and provides:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part * * * is liable to such person in an amount equal to the sum of –

(1) any actual damage sustained * * *;

(2) [statutory damages]; and

(3) in the case of any successful action to enforce *the foregoing liability* or in any action in which a person is determined to have a right of rescission

> under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1640(a) (emphasis added). In *Dykstra v. Wayland Ford, Inc.*, 134 Fed. Appx. 911, 916 (6th Cir. 2005), the Sixth Circuit interpreted the phrase "the foregoing liability" as referring only to actual and statutory damages under Sections 1640(a)(1) and (2). Based on that interpretation, the *Dykstra* court concluded that TILA "provides for attorney fees and costs in only three instances: when actual damages are established under § 1640(a)(1); when statutory damages are established under § 1640(a)(2); and when a § 1635 right of rescission operates under § 1640(a)(3)." *Id.* at 917. This Court agrees with the *Dykstra* court's reading of TILA's attorney fees provision, which is consistent with the plain meaning of the attorney's fee provision. See *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000) ("The cardinal rule is that words used in statutes must be given their ordinary and plain meaning."). Here, in addition to failing to state a claim for either actual or statutory damages, Plaintiffs have not alleged that they have a right of rescission under Section 1635. Therefore, Plaintiffs are not entitled to attorney's fees.

Finally, it is unclear whether Plaintiffs request injunctive relief in this case. But to the extent that Plaintiffs do seek injunctive relief, the Eleventh Circuit's recent opinion in *Christ v. Beneficial Corp.*, 547 F.3d 1292 (11th Cir. 2008), explains why such relief is not available to private litigants under TILA. The court reasoned that "Congress has provided a comprehensive statutory scheme of remedies," which suggests that Congress intended to preclude other remedies, including injunctive relief. 547 F.3d at 1298.

In sum, because Plaintiffs have not alleged statutory or actual damages and are not entitled to any other potential relief under TILA, Count I must be dismissed.

## C. Fair Credit Billing Act Claims (Count II)

Plaintiffs allege that Defendants HSBC Nevada and HSBC Card Services violated Sections 1666 and 1666a of the Fair Credit Billing Act by failing to respond to a billing inquiry and then referring their account to a collection agency.[5] Section 1666 reads in relevant part:

> If a creditor, within sixty days after having transmitted to obligor a statement of the obligor's account in connection with an extension of consumer credit, receives at the address disclosed under section 1637(b)(10) of this title a written notice * * * from the obligor in which the obligor-
>
>> (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,
>>
>> (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and
>>
>> (3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error,
>
> the creditor shall [acknowledge receipt of the obligor's notice and conduct an investigation].

15 U.S.C. § 1666(a). The statute defines a "billing error" as:

> (1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.
>
> (2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.
>
> (3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.
>
> (4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.
>
> (5) A computation error * * *

---

[5] Defendants again argue, as they did with respect to Count I, that Plaintiffs have failed to adequately allege that either HSBC Nevada or HSBC Card Services is a "creditor" for purposes of TILA. The Fair Credit Billing Act is an amendment to TILA, and therefore if Defendants are creditors for purposes of TILA, they are also creditors and subject to liability under the Fair Credit Billing Act. As discussed above, the Court finds that Plaintiffs sufficiently have alleged that HSBC Nevada and HSBC Card Services are creditors.

(6) Failure to transmit the statement * * *

*Id.* § 1666(b).

Where the creditor receives the credit card holder's (*i.e.*, the obligor's) written notice "no later than 60 days after the creditor transmitted the first periodic statement that reflects the alleged billing error," 12 C.F.R. 226.13(b)(1), the creditor must acknowledge receipt within 30 days, investigate the matter, and either: (1) correct the error and refund any associated charges, or (2) send the obligor a written explanation of the reasons why the creditor has concluded the charges are correct, 15 U.S.C. §§ 1666(a)(3)(A) and 1666(a)(3)(B)(i)-(ii). During this time, the creditor may not attempt to collect the disputed amounts. *Id.* § 1666(c). Nor may the creditor report the disputed amount "as delinquent to any third party until the creditor has met the requirements of section 1666." *Id.* § 1666a(a).

Here, the Complaint alleges that Defendants violated Sections 1666 and 1666a of the FCBA by falsely representing to credit reporting agencies that Plaintiffs owed the annual fee and late fees. While the nature of the complained-of billing error is far from clear based on the Complaint, in their response brief, Plaintiffs contend that their FCBA claims are premised on Defendants' failure to credit Plaintiffs' account for the annual fee and ensuing late fees as promised. One of the statutorily enumerated "billing errors" is the "creditor's failure to reflect properly on a statement * * * a credit issued to the obligor." 15 U.S.C. § 1666(b)(4); see also 12 C.F.R. 226.13(a)(4) (defining the term billing error to include "[a] reflection on a periodic statement of the creditor's failure to credit properly a payment or other credit issued to the consumer's account"). As discussed above with respect to Plaintiffs' Section 1637(b)(3) claim, according to the complaint, no credit in fact was issued to Plaintiffs' account. Nevertheless, even assuming – based on the November 12, 2008 e-mail to Plaintiffs from an HSBC card

member services representative stating that "the late fee and annual fee * * * have been credited to your account" – that Plaintiffs were issued a credit, which Defendants failed to reflect on Plaintiffs' billing statement, Plaintiffs' claim fails because they failed to provide Defendants with written notice of this billing error, as the FCBA requires.

Plaintiffs concede that they did not comply with Section 1666(a)'s notice requirements. However, they contend that they were not required to do so because Defendants already were aware that Plaintiffs did not owe the annual fee and late fees, as evidenced by the November 12, 2008 e-mail.

The plain language of Section 1666(a) demonstrates that a creditor's obligations under the Act – including any obligation to correct a billing error – are triggered by written notice from the consumer. 15 U.S.C. § 1666(a) ("If a creditor * * * receives * * * a written notice * * * the creditor shall * * * make appropriate corrections in the account of the obligor"); see also *Greisz v. Household Bank (Illinois)*, 8 F. Supp. 2d 1031, 1042 (N.D. Ill. 1998) ("a creditor's duty to investigate and to resolve an alleged billing error is triggered only when the consumer provides proper written notice"); *Jeffries v. Dutton & Dutton, P.C.*, 2006 WL 1343629, at *6 (N.D. Ill. May 11, 2006) ("§ 1666's resolution procedures are triggered when a consumer sends the creditor notice of a billing error"). The FCBA contains no exception for circumstances where the creditor already is aware of an alleged billing error. And even if written notice was not required in those circumstances (which the Court doubts), Plaintiffs' claim nevertheless fails because Plaintiffs do not allege that Defendants were aware of the billing error at issue – namely, Defendants' alleged failure to properly credit Plaintiffs' account. Plaintiffs contend that Defendants were aware that Plaintiffs' account *should* be credited for the annual and late fees. But there is no indication that, after Defendants failed to credit Plaintiffs account as promised,

Defendants were aware of that failure "to credit properly [those credits] to [Plaintiffs'] account." 12 C.F.R. 226.13(a)(4). Because Plaintiffs failed to provide Defendants with written notice of the alleged billing error (and do not allege that Defendants were aware of that particular error), any obligation Defendants had under the Act to investigate and/or correct that billing error, was not triggered. Therefore, Count II is dismissed.

### D. Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV)

In Count IV of the Complaint, Plaintiffs bring claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA" or the "Act"), 815 ILCS 505/1, *et. seq*, for deceptive and unfair practices, and seeks damages under 815 ILCS 510a. Plaintiffs' ICFA claims are premised on the allegation that Defendants repeatedly made the false representation that Plaintiffs owed the annual and late fees to Plaintiffs and third parties "assessing Plaintiffs' credit-worthiness."[6]

The Illinois "Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002). The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. See *id.* at 960; see also *Rickher v. Home Depot, Inc.,* 535 F.3d 661, 665 (7th Cir. 2008). A plaintiff may recover under the ICFA "for unfair as well as deceptive conduct." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing*

---

[6] Defendants argue that the Complaint asserts only a deceptive practices claim and not an unfair practices claim as Plaintiffs contend in their response brief. Defendants' alleged action – falsely representing to third parties that Plaintiffs' owed certain sums – could be construed as either deceptive or unfair. Therefore, the Court will consider both claims.

*Services, Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (quoting *Robinson*, 775 N.E.2d at 960).  In order to state a claim for damages under the ICFA, a plaintiff also must allege actual damage proximately caused by the defendant's deceptive or unfair act or practice.  See 815 ILCS 505/10a(a) ("Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person" for damages); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-15 (7th Cir. 2006) (rejecting plaintiff's argument that she was not required to show actual damages, holding that "a private cause of action under the ICFA requires a showing of proximate causation").

Defendants raise multiple grounds for the dismissal of Plaintiffs' ICFA claims.  First, Defendants contend that Plaintiff's ICFA claim fails because Defendants complied with TILA. The ICFA does not apply "to Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States," or to "conduct in compliance with the orders or rules of or a statute administered by a Federal, state or local governmental agency." 815 ILCS 510/4(1); 815 ILCS 505/10b(1).  Therefore, courts in this circuit have held that "compliance with TILA is a defense under the ICFA." *Swanson v. Bank of America, N.A.*, 566 F. Supp. 2d 821, 828 (N.D. Ill. 2008); see also *Hoffman v. Grossinger Motor Corp.,* 218 F.3d 680, 684 (7th Cir. 2000) ("[C]ompliance with the disclosure requirements in the federal Truth in Lending Act is a defense under the Illinois act."); *Janikowski v. Lynch Ford, Inc.,* 210 F.3d 765, 769 (7th Cir. 2000) (affirming dismissal of ICFA claim were defendant complied with TILA).  While the Court has held that Plaintiffs' TILA claims must be dismissed because Plaintiff is not entitled to any relief under the Act, the Court also has found that Defendants failed to comply with the requirements of Section 1637(d).  Therefore, Defendants cannot defend against Plaintiffs' ICFA claims on that basis.

Second, Defendants contend that both the deceptive practices claim and the unfair practices claim should be dismissed on the grounds that Plaintiffs merely allege a breach of contract, which is not actionable as a deceptive or unfair practice under the ICFA. Plaintiffs do not respond to this argument. Defendants correctly note that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mutual Auto. Ins. Co.,* 835 N.E.2d 801, 844 (Ill. 2005); see also *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901 (7th Cir. 2006) (affirming dismissal of consumer fraud claim where the "deception" that plaintiff identified was "nothing more than the failure to fulfill [a contractual] promise"); *Wooley v. Jackson Hewitt, Inc.,* 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008) (allegations were premised on tax preparation agreements and constituted a breach of contract, not actionable under the ICFA); *Sklodowski v. Countrywide Home Loans, Inc.,* 832 N.E.2d 189, 196-97 (Ill. 2005) (14-day delay in refunding mortgage escrow was based on a provision in the mortgage requiring "prompt" refund, and therefore, claim was a breach of contract claim not a consumer fraud action). Quoting *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988 (Ill. App. 2 Dist. 2000), the *Avery* court explained that "a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it[, because t]hat type of 'misrepresentation' occurs every time a defendant breaches a contract." *Avery*, 835 N.E.2d at 844. Therefore, "a naked breach-of-contract claim does not support a Consumer Fraud Act claim," and Plaintiff cannot state a "*prima facie* case simply by adducing evidence that defendants did not do what they promised." *Zankle*, 724 N.E.2d at 993.

Applying this line of cases, Plaintiffs' ICFA claims fail if the deception or unfair act identified by Plaintiffs is "simply defendants' failure to fulfill their contractual obligations." *Zankle*, 724 N.E.2d at 992. Here, Defendants had a contractual obligation to allow Plaintiffs to

avoid paying the annual fee if Plaintiffs canceled their account within 30 days of being assessed that fee. Under *Avery*, Plaintiffs' ICFA claims would fail if the alleged deceptive act was Defendants' false representation that they could avoid the fee by timely closing their account. But the deception and/or unfair act alleged in the Complaint is Defendants' reporting of false information – namely that Plaintiffs owed the annual fee and late fees after Plaintiffs timely closed their account – to credit agencies and other third parties. The basis for the allegation that the statements were false (and thus deceptive and/or unfair) is Plaintiffs' contention that, under the terms of the contract with Defendants, they did not owe any fees because they timely closed their account. Therefore, Plaintiffs ICFA claims certainly are closely related to a potential breach of contract claim. However, because it is unclear whether Illinois recognizes injury to one's credit rating as an element of damages for a breach of contract, the Court concludes that the allegation regarding third parties is sufficient to distinguish this case from *Avery* and its progeny.

Third, Defendants contend that Plaintiffs' ICFA claims fail because Plaintiffs have failed to allege actual damages. The Complaint alleges that Defendants reported Plaintiffs' failure to pay the annual fee and associated late fees to various credit scoring and reporting agencies and that Plaintiffs sustained damages. Drawing all reasonable inferences in Plaintiffs' favor, the Court will assume for purposes of the motion to dismiss that Plaintiffs' credit scores were harmed. In related contexts, district courts in this Circuit have held that a plaintiff cannot state a claim for damages merely by alleging damage to their credit rating. Rather, a plaintiff must allege that he suffered "actual damages * * * flowing from the alleged decrease in credit score such as that he was denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit." *Young v. Harbor Motor Works, Inc.*, 2009 WL 187793, at *5

(N.D. Ind. Jan. 27, 2009) (holding that plaintiff failed to "allege actual damages as required under the FCRA sufficient to raise the possibility of relief above the speculative level" where plaintiff merely alleged that his credit score decreased). At a minimum, a plaintiff must allege that the false information in their credit report was "communicated to and used by a third party." *Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809, 816-17 (N.D. Ill. 2001) (granting motion to dismiss as to plaintiff's claim for damage to her credit rating under the Real Estate Settlement Procedures Act where plaintiff failed to allege that "any credit reporting agency that received her information from the [defendant] Bank reported that information to any third party"); see also *Renninger v. ChexSystems*, 1998 WL 295497, at *6 (N.D. Ill. May 22, 1998) (granting motion to dismiss FRCA claim where plaintiff failed to allege that any third-party user ever learned of the inaccurate information in the credit agency's files, reasoning that "a consumer is not injured by an inaccurate credit report unless that false information is communicated to and acted upon by a third-party user").

Here, Plaintiffs allege that Defendants "caused sums they have reportedly claimed as due from plaintiffs for the Annual Fee and related * * * interest and late fees * * * to be reported to various credit scoring and reporting agencies, including, *inter alia*, TRW, Experian and Equifax, as past due obligations owed by plaintiffs." Cmplt. ¶ 17. However, the Complaint contains no allegation that any third-party user obtained, let alone acted upon, the false information in Plaintiffs' credit reports. Therefore, Plaintiffs have failed to allege actual damages as required to state a claim under the ICFA sufficient to raise a right to relief above the speculative level.[7]

---

[7] Defendants raise several additional arguments for dismissal of Plaintiffs' Illinois statutory consumer fraud claim. The Court need not address those arguments at this time except to note – in the event that Plaintiffs choose to file an amended complaint – that federal pleading standards apply to such a claim asserted in a federal court.

### III. Conclusion

For the foregoing reasons, HSBC Defendants' motion to dismiss [18] is granted.[8]

Dated: December  8, 2009

_____
Robert M. Dow, Jr.
United States District Judge

---

[8] As noted above, because Plaintiffs have not previously amended their complaint, dismissal with prejudice would be inappropriate at this time.  If Plaintiffs elect to attempt to cure the deficiencies in their original complaint, they may file an amended complaint within thirty days.